# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3523

_____

United States of America

*Plaintiff - Appellee*

v.

Brandon Thompson

*Defendant - Appellant*

_____

No. 15-2144

_____

United States of America

*Plaintiff - Appellee*

v.

Brandon Thompson

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Before SMITH, BYE, and BENTON, Circuit Judges.
_____

PER CURIAM.

Brandon Thompson was sentenced to 365 months' imprisonment after the district court[1] granted a partial reduction of his original 380-month sentence pursuant to 18 U.S.C. § 3582. On appeal, Thompson argues that the district court erred in (1) denying his motion for a downward variance or, in the alternative, motion to continue his original sentencing based on an anticipated change in the Guidelines; (2) granting the government's motion for an upward departure at his original sentencing based on underrepresentation of criminal history; and (3) denying Thompson a full sentencing reduction under Amendment 782. We affirm.

## I. *Background*

Thompson pleaded guilty pursuant to a written plea agreement to possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, or 50 grams or more of actual methamphetamine, after a prior drug felony conviction, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 851.

The presentence investigation report calculated Thompson's sentencing range to be 292 to 365 months' imprisonment. In advance of the sentencing hearing, the government filed a motion for an upward departure pursuant to U.S.S.G. § 4A1.3.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

Thompson filed a sentencing memorandum that included a motion for a downward variance and, alternatively, a request to continue the sentencing hearing until on or after November 1, 2014. He requested a one-level downward variance based on proposed Amendment 782 to the Drug Quantity Table in U.S.S.G. § 2D1.1.

"Amendment 782 became effective November 1, 2014, and applies retroactively to reduce most drug quantity base offense levels by two levels." *United States v. Lawin*, 779 F.3d 780, 781 n.2 (8th Cir. 2015) (per curiam) (citing *United States v. Thomas*, 775 F.3d 982, 982 (8th Cir. 2014) (per curiam)). "Amendment 782 has a broader focus than the crack cocaine amendments, lowering the base offense level for most drug quantity offenses under § 2D1.1." *Thomas*, 775 F.3d at 982–83.

At sentencing on October 20, 2014, both parties agreed that the applicable Guidelines range was 292 to 365 months' imprisonment. That range was based on an offense level of 38 after a two-level enhancement was added to the base offense level of 36 for possession of a dangerous weapon. The court granted a two-level reduction for acceptance of responsibility, and the government requested—and the court granted—an additional one-level reduction for acceptance of responsibility. That yielded a total offense level of 35 and a criminal history category of VI for career offender status. Thompson had a total of 20 criminal history points, only 13 of which were needed to reach a criminal history category of VI. This resulted in the undisputed Guidelines range of 292 to 365 months' imprisonment.

The government then argued for an upward departure for underrepresentation of criminal history under § 4A1.3. The government noted that (1) the current offense was Thompson's "tenth felony drug conviction"; (2) "[h]e was under a criminal justice sentence for seven different cases at the time of the instant offense"; and (3) "[h]e is a career offender with five separate scoring predicate convictions" and other convictions that "would have counted had they been separately scored." The government characterized Thompson as "not a typical career offender," noting that

Thompson's "base offense level didn't even change due to his career offender status because his quantity was so high." The government pointed out that one of Thompson's predicate offenses was for "eluding causing bodily injury," a crime of violence.

After hearing from Thompson's counsel, the court then granted the government's motion for an upward departure, concluding that Thompson's case "is not a typical criminal history category VI situation because of the 10 felony drug offenses, the fact that he was on paper for seven different offenses at the time of the arrest for this offense." The court noted that Thompson had 20 criminal history points and that only 13 were needed for him to have a criminal history category of VI. The court found Thompson "at high risk to recidivate" based "on his criminal past . . . but probably more importantly on the fact that he's been unsuccessful on supervision in the state court system." The court departed upward to an offense level of 36, resulting in a new Guidelines range of 324 to 405 months' imprisonment.

The government requested "that the [c]ourt impose a sentence of at least 365 months"—the middle of the new range. Thompson requested a sentence at the bottom of the Guidelines range because (1) the drug quantity was at the lower end of the applicable range, (2) his Guidelines range already reflected the upward departure for criminal history, and (3) he attempted to assist law enforcement. Thompson also requested that the court grant "an additional level off for the change in the [G]uidelines, which will be effective on November 1st."

After hearing from counsel and Thompson, the court denied Thompson's request for a variance and sentenced him to 380 months' imprisonment. The court stated that it had "carefully considered each and every factor under 18 United States Code Section 3553(a)" in arriving at the 380-month sentence. The court explained that it was denying Thompson a variance because "if [it] were to vary at this point or even consider a variance, [the court] would not be treating people the same because

-4-

even if Congress does not act by November 1, 2014, there is a year delay in any reduction of sentence that the Court would impose." The court left "for another day" whether it would reduce Thompson's sentence, citing Thompson's "horrible criminal history" and the fact that he had "repeatedly violated the law by possessing with intent to deliver or actually delivering drugs" and had "a number of other very serious felonies: Absconds/escapes, resists law enforcement, placing everyone in danger." The court advised Thompson that "he should not count on" a sentence reduction because he was "not a particularly attractive defendant."

Nevertheless, the court emphasized that it would examine Thompson's case, as it was going to do "every single other drug case that [the court] ha[d] sentenced," "between November 1st of 2014 and November 1st of 2015." It observed that "[n]o sentence reductions for anyone in the United States can go into effect until November 1st of 2015" and advised that Thompson need not do anything for the court to review his case in light of Amendment 782. According to the court, "If it looks like I'm going to deny his request or I'm uncertain if I'm going to grant it, I would appoint counsel and give him an opportunity at a hearing over the telephone to convince me that he is an individual that is deserving of the sentence reduction."

Although the court recognized that it "ha[d] the power to vary today," it chose not to grant Thompson's downward-variance request. The court then discussed the circumstances of the offense, Thompson's criminal history, and his personal characteristics in reaching the 380-month sentence. The court stressed that in crafting the 380-month sentence, it had "considered all the statutory factors that apply" but was "not going to dictate them into the record today."

Thereafter, on May 14, 2015, the court held a hearing on its own motion under 18 U.S.C. § 3582(c)(2) after making a preliminary finding that Thompson was eligible for a sentence reduction. Although Amendment 782 had reduced Thompson's

-5-

drug offense level, his status as a career offender resulted in only a one-level reduction to level 34.

At the hearing, the court noted that the reduction was discretionary under § 3582 and that, in order to make that decision, the court must analyze the § 3553(a) factors. The court explained that under retroactive Amendment 782 that went into effect on November 1, 2014, Thompson's total offense level became a 34 with a criminal history category of VI; this resulted in a Guidelines range of 262 to 324 months' imprisonment. According to the court, if it departed upward one level—which it had done at the original sentencing—then Thompson's new range of imprisonment would be 292 to 365 months' imprisonment. The court then asked for argument from the parties.

The government characterized Thompson's "criminal history" as "quite amazing," noting that eight felony convictions exist from 1998 to 2014. The government asked for the court to again impose an upward departure for understated criminal history. The government "suggest[ed] that the full reduction in this case may be unwarranted and . . . suggest[ed] that a partial reduction to a sentence less than 380 but more than the 365 is appropriate."

In response, Thompson's counsel asked the court to consider four factors: (1) Thompson was already limited in the amount of the sentence reduction by the career offender guideline, which restricted him to a one-level instead of a two-level reduction; (2) given Thompson's age, if he served a 380-month sentence, then he would not be released until he was approximately 71 years old; (3) Thompson was in state custody and had not started serving his federal sentence; and (4) prior to being indicted, Thompson voluntarily met with law enforcement. Thompson asked that the court grant the reduction to "put him in the same position as others who have gotten a reduction because of the change in the guideline."

The court then reduced Thompson's sentence to 365 months' imprisonment. In granting a partial sentencing reduction, the court observed that it did "not think [it] erred in [its] original sentencing of him" by departing upward based on its findings that Thompson's "criminal history category did not capture fully the seriousness of his criminal conduct" and that Thompson was at a "high risk to recidivate." As a result, the court gave Thompson "a slight reduction, but for the very same reasons that [it] stated when [it] sentenced him originally—he has a very serious criminal history, recidivism." The court cited Thompson's "8 prior felony drug convictions, 2 weapon-based convictions, [and] 5 career offender predicates." The court declined to give Thompson "a full reduction because his background suggests that he is at high risk to recidivate."

## II. *Discussion*

On appeal, Thompson argues that the district court erred in (1) denying his motion for a downward variance or, in the alternative, motion to continue his original sentencing based on an anticipated change in the Guidelines; (2) granting the government's motion for an upward departure at his original sentencing based on underrepresentation of criminal history; and (3) denying Thompson a full sentencing reduction under Amendment 782.

### A. *Downward Variance/Continuance of Original Sentencing*

Thompson argues that the district court erred in refusing to vary downward one level at his original sentencing to account for then-proposed Amendment 782. He notes that his counsel reminded the court that it would be virtually impossible for Congress to modify the proposed amendment in the 12 days prior to November 1, 2014, because Congress was not in session until after that date. Counsel suggested that considerable court resources would be saved if the court granted Thompson the benefit of the additional level at the time of original sentencing rather than at a post-sentencing reduction under 18 U.S.C. § 3582(c)(2). Thompson argues that the court's failure to grant the reduction prejudiced him "because a variance granted at the time

of original sentencing was certain to take into account the guideline change, whereas waiting for re-sentencing next year is only speculative." He also argues that the court abused its discretion in refusing to continue the October 20, 2014 sentencing hearing until November 1, 2014, so that Thompson's sentencing hearing could take place after the effective date of the amendment. He notes that he made the request two weeks prior to the scheduled sentencing date and asked for a delay of only two weeks until after the effective date of the new guideline.

"[W]hether [Thompson] is entitled to a reduction in his sentence based on § 3582(c)(2) is a separate question from whether the district court erred in denying his motions" to vary downward in anticipation of Amendment 782 and continue sentencing until after November 1, 2014. *See Lawin*, 779 F.3d at 782. Nonetheless, Thompson's argument that the district court erred in denying these motions fails.

We have recently rejected the argument that a "district court erred in denying [a] motion to vary downward . . . from the correctly calculated guidelines range in anticipation of Amendment 782." *Id*. at 781. "Our case law on this issue is clear: [T]he district court was not required to consider the pending guidelines amendment. Consideration of the pending amendment is merely permissible, not required." *Id*. (alteration in original) (quotation and citations omitted); *see also United States v. Riehl*, 779 F.3d 776, 778 (8th Cir. 2015) (per curiam) (holding that the district court was not required to consider pending Amendment 782 in sentencing defendant prior to amendment's effective date because the consideration of pending amendment was merely permissible, not required). "[O]ur holdings were not limited to any specific amendment. Moreover, they follow the firmly-established principle that the court must apply the Sentencing Guidelines in effect at the time of sentencing unless doing so would violate the ex post facto clause of the United States Constitution." *Lawin*, 779 F.3d at 781 (citation omitted). In the present case, "[t]he district court considered and rejected prospectively applying Amendment 782. It did not err in so doing." *See id*.

Thompson "also argues the district court erred in denying his request to continue the sentencing hearing until after November 1, 2014." *See id*. "'We will reverse a district court's decision to deny a motion for continuance only if the court abused its discretion and the moving party was prejudiced by the denial.'" *Id*. at 781–82 (quoting *United States v. Woods*, 642 F.3d 640, 644 (8th Cir. 2011)). Similar to the defendant in *Woods*, Thompson essentially "argues a district court abuses its discretion unless it suspends all sentencing upon the enactment of potentially favorable legislation or Guidelines amendments until the changes are fully effective and all the details become known." 642 F.3d at 644–45. We have rejected such an argument as "untenable." *Id*. at 645. Even though Thompson "may believe he had good reason to delay, . . . his desire to postpone his sentencing further does not compel the district court to grant his request." *See id*.

## B. *Upward Departure*

Thompson argues that the district court abused its discretion in failing to fully consider his personal characteristics and history and other factors supporting leniency when it granted the government's motion for an upward departure at his original sentencing. He argues that a person in his situation with no prior criminal history score would face an advisory Guidelines range beginning at 108 months, but because he is a career offender, his Guidelines range jumped to around 30 years. He asserts that his criminal history score already accounted for a set of past convictions that the Sentencing Commission has deemed of sufficient seriousness to warrant a sentence near the top of the applicable statutory limit. He also argues that the court failed to explain how additional prison time beyond age 70 (Thompson is in his mid-40s) will result in lower recidivism or to consider Thompson's other personal characteristics and history.

We review for an abuse of discretion a district court's decision to depart upward. *United States v. King*, 627 F.3d 321, 323 (8th Cir. 2010). Section 4A1.3(a)(1) of the Guidelines directs that a district court may depart upward "[i]f

reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." According to § 4A1.3(a)(4)(B):

> In a case in which the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

"When deciding whether to depart based on the inadequacy of a category VI criminal history, 'the court should consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record.'" *King*, 627 F.3d at 323 (quoting U.S.S.G. § 4A1.3, cmt. n.2(B)).

Thompson's "case fits squarely within U.S.S.G. § 4A1.3(a)(2)(A) . . . . That section provides that an upward departure may be based on information concerning '[p]rior sentence(s) not used in computing the criminal history category . . . .'" *See id*. (second alteration in original) (quoting U.S.S.G. § 4A1.3(a)(2)(A)). We have previously rejected a defendant's argument "that the district court's upward departure was unwarranted because his career offender status 'already punished him.'" *Id*. "A career offender is not immune from an upward departure under U.S.S.G. § 4A1.3." *Id*. This is because "[a]n upward departure is appropriate where a category VI criminal history does not adequately reflect the defendant's criminal past." *Id*. (citing U.S.S.G. § 4A1.3 cmt. n.2(B)). "This principle is no less applicable where the defendant is a career offender." *Id*. We have recognized that not all career offenders are the same; "'[t]he length and scope of the career that lands the criminal under the career-offender guideline are appropriate grounds for departure, either upward or

-10-

downward, in an unusual case.'" *Id*. at 323–24 (quoting *United States v. Greger*, 339 F.3d 666, 672 (8th Cir. 2003)).

Here, the district court noted that Thompson had accumulated 20 criminal history points and that only 13 were needed for him to have a criminal history category of VI. *See United States v. Outlaw*, 720 F.3d 990, 993 (8th Cir. 2013) (affirming upward departure under § 4A1.3 where "the district court found that a category VI criminal history under-represented [the defendant's] criminal history," considering that "Category VI requires a minimum of 13 criminal history points" and the defendant's "23 points far exceeded this minimum"). Thompson also had five separate career offender predicates, which were all committed in a ten-year time period. And, he had additional convictions that would have been career-offender predicate convictions if they had been separately scored. The district court also noted Thompson's criminal history indicated that he was "at a high risk to recidivate." "A defendant's recidivism is a reasonable basis for applying an upward departure." *United States v. Gonzalez*, 573 F.3d 600, 606 (8th Cir. 2009) (citation omitted). The court also properly considered that Thompson was "on paper for seven different offenses at the time of the arrest for this offense."

Therefore, we conclude that the district court did not abuse its discretion in departing upward.

## C. *Sentencing Reduction*

Thompson argues that the district court abused its discretion in reducing his sentence to only 365 months' imprisonment. According to Thompson, instead of imposing a comparable sentence of 342 months as the probation office had suggested, the court imposed a term at the top of the reduced Guidelines range of 292 to 365 months' imprisonment because of Thompson's high risk to recidivate. Thompson argues that the court had already considered this factor at the time of his original sentence and that, as a result, the court had granted the government's motion to depart

-11-

upward one level. Thompson contends that nothing in his criminal background had changed between his original sentencing and modification hearing. In summary, he asserts that "[h]aving already taken recidivism and criminal history into account by departing upward one level, the court should not have imposed a sentence at the top of the range."

"We review a district court's decision under § 3582(c)(2) to reduce a sentence and the extent of any reduction for an abuse of discretion." *United States v. Burrell*, 622 F.3d 961, 964 (8th Cir. 2010) (citation omitted).

Section 3582(c)(2) provides that

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

"To obtain a reduction in a term of imprisonment based on an amendment to the Sentencing Guidelines, the relevant amendment must be listed in U.S.S.G. § 1B1.10(d)." *United States v. Diaz,* __F. App'x__, 2015 WL 6143126, at *2 (11th Cir. Oct. 20, 2015) (per curiam) (citing U.S.S.G. § 1B1.10(a)(1)). Amendment "782 to the Sentencing Guidelines [is] listed in § 1B1.10(d)." *Id.* (citing U.S.S.G. § 1B1.10(d)). That amendment "reduced by two levels the base offense levels that apply to offenses involving cocaine." *Id.* (citation omitted).

> In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. 3582(c)(2) and this policy statement is warranted, the court shall determine the amended

guideline range that would have been applicable to the defendant if [Amendment 782] . . . had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only [Amendment 782] . . . for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

U.S.S.G §1B1.10(b)(1).

Under § 3582(c)(2), a district court employs a "two-step approach" in a sentencing-modification proceeding. *Dillon v. United States*, 560 U.S. 817, 827 (2010). First, the court must "follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id*. Pursuant to § 1B1.10(b)(1), a court must "begin by 'determin[ing] the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Id*. (alteration in original) (quoting U.S.S.G. § 1B1.10(b)(1)). The applicable Guidelines range in the 3582(c)(2) context is the range "determined before consideration of any departure provision in the Guidelines Manual or any variance." U.S.S.G. §1B1.10 cmt. n.1(A).

According to § 1B1.10(b)(1), "'[i]n making such determination, the court shall substitute only the amendments listed in subsection ([d]) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.'" *Dillon*, 560 U.S. at 827 (quoting U.S.S.G. § 1B1.10(b)(1)). Because of "the limited nature of § 3582(c)(2) proceedings, § 1B1.10(b)(2) also confines the extent of the reduction authorized." *Id*. This means that "[c]ourts generally may 'not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range' produced by the substitution." *Id*. (alteration in original) (quoting U.S.S.G. § 1B1.10(b)(2)(A)). Furthermore, "[o]nly

-13-

if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range." *Id*. (quoting § 1B1.10(b)(2)(B)).

Second, the court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id*. Specifically, "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." U.S.S.G. § 1B1.10(b) cmt. n.1(B)(ii). A court's "reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry." *Dillon*, 560 U.S. at 827. Proceedings pursuant to § 3582(c)(2) are not "plenary resentencing proceedings." *Id*.

Here, the district court followed the two-step process for determining to what extent to reduce Thompson's sentence. The court first calculated the amended Guidelines range, and Thompson does not dispute that the district court did this properly. Second, the court noted its consideration of the § 3553(a) factors at sentencing without specifically discussing them individually. *See United States v. Castillo*, 713 F.3d 407, 412 (8th Cir. 2013) ("When considering the § 3553(a) factors, '[a] district court is not required to make specific findings; all that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors.'" (alteration in original) (quoting *United States v. Perkins,* 526 F.3d 1107, 1110 (8th Cir. 2008))). The district court determined the extent of the reduction from the 380-month sentence to the new, reduced sentence based upon Thompson's extensive criminal history and the risk his release posed to the community—factors similar to those considered in the original U.S.S.G. §4A1.3 upward departure. Consideration of "the nature and seriousness of the danger to . . . the community" is a factor that the district court was *required* to consider

-14-

pursuant to § 1B1.10(b) cmt. n.1(B)(ii). The district court has "substantial latitude to determine how much weight to give the various factors under § 3553(a)" and chose to give more weight to the aggravating factors of recidivism and Thompson's criminal history. *See United States v. Timberlake*, 679 F.3d 1008, 1012 (8th Cir. 2012) (quotation and citation omitted). As a result, the district court did not abuse its discretion in reducing Thompson's 380-month sentence to 365 months' imprisonment.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____