United States Court of Appeals

For the Eighth Circuit

_____

No. 17-1754

_____

United States of America

*Plaintiff - Appellee*

v.

Scott Allen Kopecky

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: March 15, 2018
Filed: May 24, 2018

_____

Before GRUENDER, MURPHY, and KELLY, Circuit Judges.[1]

_____

GRUENDER, Circuit Judge.

Scott Kopecky was indicted on one count of conspiracy to possess with intent to distribute and to distribute a controlled substance. *See* 21 U.S.C. § 841(a)(1); *id.* § 846. A jury found Kopecky guilty of the offense. Kopecky now appeals the district

_____

[1]This opinion is being filed by Judge Gruender and Judge Kelly pursuant to 8th Cir. Rule 47E.

court's[2] denial of his motion for mistrial, arguing that prosecutorial misconduct deprived him of a fair trial. Because the district court did not abuse its discretion in denying this motion, we affirm Kopecky's conviction.

## I.

Kopecky was charged as part of a conspiracy to distribute methamphetamine. The conspiracy involved Jesus Radillo, Molly McGuire, and Erik Benson, among others. At trial, Radillo, McGuire, and Benson testified as to the details and circumstances surrounding the conspiracy, and the Government presented financial and telephone records that corroborated various aspects of their testimony. This evidence established, among other things, that Radillo supplied Kopecky with an estimated thirty to forty pounds of methamphetamine over the course of several months. Kopecky in turn began supplying others with methamphetamine, including McGuire, who served as one of his distributors. On one occasion in early 2014, Kopecky and his girlfriend, Toniah Lorge, met McGuire and Radillo in Devils Lake, North Dakota. Kopecky bought two pounds of methamphetamine from Radillo and then offered to sell an ounce or two to McGuire.

A few hours after the meeting at Devils Lake, Deputy John Grabanski conducted a traffic stop of a van in Grand Forks, North Dakota. Lorge was driving the vehicle, and Kopecky was in the passenger seat. Deputy Grabanski testified that he placed Lorge in the back of his patrol car after determining that she had a suspended license. He then asked Kopecky for identification. Kopecky initially provided a false name and no identification, but he eventually revealed his true identity. Because there was an active warrant for his arrest, Kopecky was placed in the back of the patrol car as well. Deputy Grabanski then asked for consent to search

---

[2]The Honorable Ralph R. Erickson, then United States District Judge for the District of North Dakota, now United States Circuit Judge.

the van, which was denied. After a drug-sniffing dog arrived on scene, but before the sniff, Kopecky admitted that there was marijuana in the vehicle. Once the marijuana was removed, the dog was deployed and indicated near the back of the van. Inside, officers found methamphetamine, a scale, multiple sizes of Ziploc bags, and at least seven cell phones.

At one point during direct examination, while the prosecutor was questioning Deputy Grabanski about what happened after he placed Lorge and Kopecky in the back of his squad car, the following exchange occurred:

Q: What happened?
A: Okay. I had them both in the back of my vehicle. I asked for consent to search the vehicle at that point.
Q. Did you get consent?
A. I did not.

After this exchange, Kopecky objected and moved for a mistrial, arguing that the jury was being asked to draw an adverse inference from the exercise of his constitutional right to remain free from unreasonable searches and seizures. The court denied the motion for mistrial but gave the following instruction:

Ladies and gentlemen of the jury, the Fourth Amendment to the United States Constitution guarantees each individual in the United States a right to be free from a search or a seizure of your property or person without a warrant. And so every one of us has a right to decline an invitation to search. You cannot draw any inference of guilt from a decision to exercise a constitutional right. You can't mention it. You can't discuss it. It should not have been mentioned here today and you should completely and totally disregard it.

Neither party objected to the court's instruction, and Deputy Grabanski went on to discuss the events surrounding the vehicle stop. Kopecky renewed his motion for mistrial at the end of the Government's case, and the district court denied it.

After deliberating, the jury found Kopecky guilty of the charged conspiracy and concluded that the conspiracy involved 500 grams or more of methamphetamine. Thereafter, the district court sentenced Kopecky to 144 months' imprisonment. Kopecky timely appealed.

## II.

Kopecky claims that by eliciting testimony regarding his refusal to consent to a vehicle search, the Government improperly suggested to the jury that the exercise of his Fourth Amendment right to remain free from warrantless searches was evidence of guilt, which constituted prosecutorial misconduct. He argues further that because the improper questioning so tainted the trial, the district court should have declared a mistrial.

We review for an abuse of discretion the district court's denial of a defendant's motion for mistrial on the basis of prosecutorial misconduct. *United States v. Beeks*, 224 F.3d 741, 745 (8th Cir. 2000). "Prosecutorial misconduct is grounds for a mistrial where (1) the prosecutor's remarks are improper, and (2) the remarks prejudicially affect the defendant's substantial rights so as to deprive the defendant of a fair trial." *Id.* To determine whether the defendant was deprived of a fair trial, we consider three factors: the cumulative effect of the misconduct, the strength of the properly admitted evidence, and any curative actions taken by the district court. *Id.* "The ultimate question is whether the prosecutor's comments, if improper, so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. New*, 491 F.3d 369, 377 (8th Cir. 2007) (internal quotation marks omitted).

Here, even assuming the prosecutor's line of questioning was improper,[3] the district court did not abuse its discretion in denying Kopecky's motion for mistrial because the exchange did not prejudicially affect his right to a fair trial. All three factors noted above support this conclusion. First, the exchange between the prosecutor and Deputy Grabanski was brief, ambiguous, and had little potential for prejudicial effect in light of the whole trial. The testimony in question constituted a single, short, isolated exchange in the context of a several-day trial: "Did you get consent?" "I did not." *See United States v. Hernandez*, 779 F.2d 456, 460 (8th Cir. 1985) (finding "no 'cumulative effect' problem" where the defendant raised only a single prosecutorial remark on appeal and distinguishing cases where "the prosecutor has repeatedly made improper comments"). Kopecky makes no allegation of the kind of cumulative and pervasive misconduct that has led to reversals in other cases. *See, e.g.*, *United States v. Conrad*, 320 F.3d 851, 854-57 (8th Cir. 2003). While in some cases "a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated," *see Beeks*, 224 F.3d at 746, here, the strength of any negative inference was weak. Indeed, neither the prosecutor nor Deputy Grabanski even specified whether Lorge or Kopecky denied consent. This brief, opaque exchange is not the kind of improper questioning that is so destructive to the right to a fair trial as to mandate reversal of a conviction. *See id.*

Second, the Government presented strong, independent evidence of Kopecky's guilt. The testimony from the three coconspirators detailed Kopecky's role in a concerted effort to distribute methamphetamine. Kopecky questions the reliability of their accounts, but the testimony was largely consistent across witnesses, *see United States v. Scholle*, 553 F.2d 1109, 1119 (8th Cir. 1977), and Kopecky had the opportunity to test its reliability on cross-examination. Weighing the evidence and

---

[3]We have not specifically addressed whether eliciting testimony regarding a defendant's refusal to consent to a search, protected by the Fourth Amendment, is improper *per se*. Because the issue is not necessary to the resolution of this case, we need not consider it here.

witness credibility, the jury chose to convict. We will not question the jury's credibility determinations. *See United States v. Hodge*, 594 F.3d 614, 618 (8th Cir. 2010). Moreover, the financial and phone records corroborated the witnesses' testimony, undercutting Kopecky's proffered innocent explanations. Perhaps most convincingly, the Government presented physical evidence including the methamphetamine, scale, and baggies found in Kopecky's vehicle during Deputy Grabanski's stop, and it offered testimony about the numerous cell phones also found in the vehicle. Taken together, the jury was presented with strong evidence of guilt.

Third, the district court issued a firm curative instruction immediately after the exchange in question, making clear to the jury that it could not "draw any inference of guilt from a decision to exercise [the] constitutional right" to "decline an invitation to search." We "presume that juries follow a court's instructions," *United States v. Pendleton*, 832 F.3d 934, 944 (8th Cir. 2016), and we are "satisfied that the court's curative actions here dispelled any potential for undue prejudice stemming from the improper remarks," *United States v. Figueroa*, 900 F.2d 1211, 1216 (8th Cir. 1990).

On the basis of these three considerations, we find that the brief exchange between the prosecutor and Deputy Grabanski was not so prejudicial as to deprive Kopecky of a fair trial.

## III.

Accordingly, the district court did not abuse its discretion in denying Kopecky's motion for mistrial, and we affirm the conviction.

_____